## CELLULOID MANUF'G Co. and others *v.* COMSTOCK and others.

*(Circuit Court, D. Connecticut.   February 21, 1885.)* .

PATENTS FOR INVENTIONS—CELLULOID COVERING FOR PIANO KEYS—INFRINGE-
    MENT—PATENT No. 210,780.
        Defendant covered piano keys in the following manner, after the service of
    the injunction granted in *Celluloid Manuf'g Co.* v. *Pratt,* 21 FED. REP. 313:
    Two strips of muslin were glued to the upper surface of a sheet of celluloid.
    The sheet having been turned over, was fed into a machine, the knife of which
    partially cut and severed successive keys of the proper width as the sheet pro-
    gressed over the table of the machine.   By pressure, which was applied suc-
    cessively to each partially severed key, each key was broken and entirely sep-
    arated from its fellows, but not from the muslin, which adhered to the row of
    keys and kept them in place so that the row could be easily handled.   Cement
    was then spread upon the under surface of the keys, and the whole row was laid
    upon the key-board at the same time and subjected to pressure, as when an
    uncut sheet is fastened to the board.   *Held,* not an infringement and a viola-
    tion of the injunction.

In Equity.
*Frederic H. Betts,* for plaintiffs.
*John K. Beach* and *John S. Beach,* for defendant.
SHIPMAN, J.   This is a motion to punish the defendants for con-
tempt in violating the injunction heretofore granted to compel them
to file with the master an account of the key-boards which they had
covered with celluloid since the service of the injunction.   The opin-
ion which was given upon the final hearing of the case described the
invention and construed the patent.   *Celluloid Manuf'g Co.* v. *Pratt,*
21 FED. REP. 313.   Since the service of the injunction, the defend-
ants cover their keys in the following manner:   Two strips of muslin
are glued to the upper service of a sheet of celluloid.   The sheet
having been turned over, is fed into a machine, the knife of which
partially cuts and severs successive keys of the proper width as the
sheet progresses over the table of the machine.   By pressure, which
is applied successively to each partially severed key, each key is
broken and entirely separated from its fellows, but not from the mus-
lin, which adheres to the row of keys and keeps them in place so that
the row can be easily handled.   Cement is then spread upon the un-
der surface of the keys, and the whole row is laid upon the key-board
at the same time, and subjected to pressure as when an uncut sheet
is fastened to the board.   The plaintiff insists that this row of keys,
attached to each other by strips of muslin, is, practically, the "con-
tinuous strip or roll" of celluloid which is described and claimed in the
patent, and that as the gist of the patent "lies in handling the cover-
ing for the whole, or a substantial portion of the whole, key-board as
a single piece," the defendants still infringe.
    If the plaintiff's definition of the invention was a complete one,
their conclusion might follow; but the invention did not consist merely
in the fact that the covering of the board is handled as a single piece.

It consisted, also, in the fact that it is a single piece when put upon and fastened to the key-board, and thereby it possesses advantages over detached and separate pieces, whether made of ivory or celluloid. The complainants' record is quite clear on this point. For example, the inventor endeavored to fasten separate celluloid keys in the same manner that ivory strips are secured to the wood, but was unsuccessful, because, as he testified, separate celluloid strips warped the wood of the keys in a series of short curves, which difficulty was prevented by the use of a continuous sheet. When the single sheet is cut into a series of strips for each key, before being cemented to the wood, the invention, as described and claimed in the patent, no longer exists; because, no matter how skillfully the separate strips are manipulated so as to be placed upon the board with ease, the invention was the continuous strip or roll, as contrasted with separate strips for each key.

The motion is denied.